## SAVAGE v. GERSTNER.

(Supreme Court, Appellate Division, Second Department. January 10, 1899.)

1. LAW OF THE ROAD—PEDESTRIANS.
　　1 Rev. St. (9th Ed.) p. 716, § 157, requiring persons traveling on highways with carriages and meeting to turn to the right of the road so as to permit a passage, does not apply to pedestrians.

2. SAME.
　　There is no law of the road that pedestrians and teams meeting must keep to the right, or that one overtaking the other must turn to the left.

3. APPEAL—EXCEPTIONS—SUFFICIENCY.
　　Where a jury was charged as to the law of the road in an action by a pedestrian for being run into by a team, an exception "to the statement of the law of the road" may be construed as presenting both the correctness of the charge and its applicability.

4. SAME—ERROR—PREJUDICE.
　　An instruction in an action for injuries received by a pedestrian in crossing the street that the law of the land is that driver must keep to the right is error prejudicial to defendant, since the pedestrian and the driver of a wagon have a common right of passage, and each is bound to exercise due care.

Appeal from trial term, Queens county.

Action by Henry W. Savage against Anthony W. Gerstner. From a judgment for plaintiff, and from an order denying a new trial, defendant appealed. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

L. Sidney Carrere, for appellant.

L. B. Treadwell, for respondent.

GOODRICH, P. J. The plaintiff left the court house in the city of New York about 4 o'clock in the afternoon of November 3, 1897, and walked to Broadway. He intended to take the elevated road, to go up town, and for this reason was about to cross Broadway. He testified: "As soon as I stepped up off the sidewalk, down came this vehicle down Chambers street, coming down on the left-hand side when it should have been on the right-hand side, and struck me." The complaint has no such allegation. It simply alleges that "he was, without cause or provocation, run into and knocked down with great force and violence by a horse and wagon of defendant, which was being driven by one of defendant's employés on said Broadway, in a careless and negligent manner and at a fast and unsafe rate of speed." The action was based on the negligence of the defendant's servant, and the court properly submitted to the jury the question whether the plaintiff was acting prudently in attempting to cross Broadway. Upon the question of the defendant's negligence, the learned judge called attention to the testimony given by the driver. The latter testified that he was proceeding on Chambers street, towards the North river, and that he came into Broadway from the left-hand side (that is, the southerly side) of Chambers street; that there was a blockade at the corner, and that he tried to cross over the street (Broadway), when the plaintiff, who was at-

tempting to board a street car, backed up against his horse and was thereby thrown to the ground. There was evidence contradicting the driver's statement that there was a blockade and that the plaintiff was attempting to board a street car. There was no exception by either party to the body of the charge, but "the jury returned into court and asked whether a person driving on the left-hand side is lawfully there or not. The Court: The law of the road, gentlemen, in this country, is to go to the right. That is the general law. When you are on the road, keep to the right, except, when you come up in the rear and overtake anybody, you pass to the left. Now, sometimes, in crowded places, you cannot keep to the law of the road, and there the rule of ordinary prudence and common sense must govern. Sometimes you have to get off the right side to go to the left for some reason, and when you have to it is allowable to do it. Defendant's Counsel: I except to the statement of the law of the road." We think this statement of the law was incorrect and calculated to mislead the jury. I find no authority in the decisions of our courts which requires a person approaching from the rear and overtaking any person to pass to the left. The only statutory provision on the general subject is that found in 2 Rev. Laws 1813, p. 283, § 41, which is substantially the same as the present provision found in 1 Rev. St. (9th Ed.) p. 716, § 157. This latter provision reads as follows:

"Whenever any persons traveling with any carriages, shall meet on any turnpike road or highway, the persons so meeting shall seasonably turn their carriages to the right of the center of the road, so as to permit such carriages to pass without interference or interruption, under the penalty of five dollars for every neglect or offense, to be recovered by the party injured."

But this applies only to persons traveling in carriages or other vehicles and meeting other persons traveling in carriages or other vehicles, and does not apply to the case of a person in a carriage meeting a person on foot. Dudley v. Bolles, 24 Wend. 465, was an action to recover damages occasioned by a collision between a mule drawing a cutter and a person riding on horseback. The court said (page 472):

"There is no law of the road requiring a man on horseback, when meeting a horse or vehicle, to turn out on the right or left side. The rider must govern himself in this respect according to his notions of prudence at the time, under the circumstances."

In an opinion by Mr. Justice Hatch in Newman v. Ernst (Super. Buff.) 10 N. Y. Supp. 310, it was said:

"The statute provides a penalty for a person driving upon the roadway, and about to meet a passing team, who does not turn to the right of the center of the road. Earing v. Lansingh, 7 Wend. 185. But such statute does not provide, per se, that an offender shall be liable for all damage which may happen while there. While it may be legal negligence for him to be there, his liability must depend upon the rules of law applicable to cases of negligence. Simmonson v. Stillenmerf, 1 Edm. Sel. Cas. 194; Brooks v. Hart, 14 N. H. 307; Parker v. Adams, 12 Metc. (Mass.) 416; Palmer v. Barker, 11 Me. 338."

The case at bar must rest on the evidence of the negligence of the defendant. In this view it is to be observed that footmen have no right of way, at a crossing in a city street, superior to that of

vehicles.   Each has the right of passage in common, and in the use
of this right is bound to exercise reasonable care for his own safety
and to avoid doing injury to others who may at the same time be
in the use of their right of way.   Barker v. Savage, 45 N. Y. 191.
The defendant's driver had a legal right to be in any part of the
street, and as long as he was not negligent in driving it cannot be
said that his position, or the course which he was driving, rendered
the defendant liable; and yet the jury were not fairly instructed
as to the effect of the law of the road as stated by the court upon
the case submitted to them.   We have had some doubts whether
the exception was stated as fully and carefully as it ought to
have been, but it is difficult to say that the attention of the court
was not properly called to the error.   The defendant's counsel ex-
cepted "to the statement of the law of the road."   Certainly this
can be construed as relating both to the correctness of the state-
ment of the law and also to its applicability to the issues.   At any
rate, the instruction seems to us to have worked an injustice to the
defendant, within the rule stated in Howell v. Manwaring, 3 N. Y.
St. Rep. 454, affirmed without opinion in 118 N. Y. 682, 23 N. E. 1147,
and Maier v. Homan, 4 Daly, 168.   The judgment and order must
be reversed.

Judgment and order reversed, and new trial granted; costs to abide the
event.   All concur.